UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| **HARTFORD CASUALTY INSURANCE COMPANY** <br> (Plaintiff) | **CIVIL ACTION NO: 1:10CV667** <br><br> **JUDGE DRELL** |
| **VERSUS** | **MAGISTRATE JUDGE KIRK** |
| **ARKANSAS, LOUISIANA, AND MISSISSIPPI PIPE TRADES ASSOCIATION OF JOURNEYMEN AND APPRENTICES OF THE PLUMBING AND PIPEFITTING INDUSTRY OF THE UNITED STATES AND CANADA** <br> (Defendant) | |

**MEMORANDUM IN SUPPORT OF ARKANSAS, LOUISIANA, AND MISSISSIPPI PIPE TRADES ASSOCIATION OF JOURNEYMEN AND APPRENTICES OF THE PLUMBING AND PIPEFITTING INDUSTRY OF THE UNITED STATES AND CANADA'S MOTION TO DISMISS OR IN THE ALTERNATIVE, TO TRANSFER VENUE TO THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**

**INTRODUCTION**

Hartford Casualty Insurance Company (hereinafter "Hartford) filed the instant declaratory judgment action within days of receiving a demand letter with an enclosed draft Complaint of Arkansas, Louisiana, and Mississippi Pipe Trades Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada (hereinafter "Tri-States"). Tri-States' demand letter followed months of providing Hartford information to refute Hartford's asserted reasons for denying coverage and refusing to defend Tri-States. Hartford has refused to provide a defense to Tri-States in the action styled *King Industries Inc. v. United Association of Plumbers and Pipefitters of the United States and Canada, Civil Action No. 3:07cv671 HTW-LRA*. This action is currently pending in the United

1

States District Court for the Southern District of Mississippi.  For the reasons set forth below, the instant action should be transferred to the Southern District of Mississippi.

## FACTS

Tri-States is an unincorporated association comprised of member Arkansas, Louisiana, and Mississippi local unions of the United Association of Plumbers and Pipefitters of the United States and Canada.  Tri-States purchased insurance for "business liability coverage" from Hartford through Union Insurance Group.  This insurance, with policy limits of $1,000,000, has continuously been in effect since January 1, 2004.

On May 2, 2007, Union organizer Steve Pike provided literature to approximately two employees of a non-union contractor at the SeverCorr site in Columbus, Mississippi.  Steve Pike was the W-2 employee of Plumbers and Pipefitters Local 714, located in Jackson, Mississippi, but his salary was reimbursed by Tri-States.  King Industries, the on-site employer of Local 714 members, with whom Pike was visiting, was removed from the site after this incident.  In October 2007, King filed suit against the international union and Local 714 in Rankin County Circuit Court, seeing $35 million in damages (later reduced to $6 million).  Defendants removed this case to the United States District Court for the Southern District of Mississippi.

On December 19, 2008, King Industries, Inc. moved to amend its Complaint in civil action number 3:07cv671 pending in the United States District Court for the Southern District of Mississippi to add Tri-States as a party defendant.  (Doc. 88).  On March 26, 2009 the United States District Court for the Southern District of Mississippi granted King leave to amend its complaint.  (Doc. 151).  King filed its Second Amended Complaint on March 30, 2009.  (Doc. 152).

On January 20, 2009, Louisiana counsel for Tri-States put Hartford on notice, through Union Insurance Group, of King's intention to add Tri-States as a party defendant in the lawsuit pending in the Southern District of Mississippi. (Exhibit A to Exhibit 1, Affidavit of Christina L. Carroll). After a conversation with Harford's claims representative, Diane DiFranco, during which DiFranco suggested Tri-States was not the named insured, Louisiana counsel began supplying Hartford with information about Tri-States' name by e-mail on March 31, 2009. (Exhibit B to Exhibit 1). Specifically, counsel supplied Tri-States LM2's and LM4's filed with the Department of Labor, Tri-States' charter, Tri-States' bylaws, Tri-States' tax return, and a list of Tri-States' officers and member locals. (Exhibit B to Exhibit 1).

Hartford first denied coverage on July 24, 2009, on the basis that the "Local Union" was not covered. (Exhibit C to Exhibit 1; Exhibit A to Exhibit 2, Affidavit of William Hussey). After counsel for Tri-States informed Hartford the party for which it was seeking coverage was Arkansas, Louisiana and Mississippi Pipe Trades Association of the United States and Canada, not Local 714, Hartford took the position by letter on September 28, 2009, that Tri-States is not the named insured. (Exhibit B to Exhibit 2). Instead, Hartford claimed "AR-LA-MS Tri-State Funds" is the named insured. The claim consultant stated in the September 28, 2009 letter:

> To the extent you are in possession of information that establishes that the Tri-States entity named in the Second Amended Complaint qualifies as an insured under the policy issued to AR-LA-MS by The Hartford, please forward such documentation to my attention at your earliest convenience.

(Exhibit B to Exhibit 2). Counsel for Tri-States provided documents as requested on January 20, 2010, including a copy of a voided check from the account on which premium payments were drawn. (Exhibit C to Exhibit 2). Counsel also provided check stubs from premium payments, premium notices from Hartford, and internal bookkeeping records. (Exhibit C to

3

Exhibit 2).  On April 16, 2010, counsel for Tri-States made a final demand for coverage, attaching a draft of a complaint styled *Arkansas, Louisiana, and Mississippi Pipe Trades Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada v. Hartford Casualty Insurance Company,* United States District Court, Southern District of Mississippi, Jackson Division.  (Exhibit D to Exhibit 2).  Attached to this Complaint were additional documents including applications for the different types of insurance issued to Tri-States by Hartford, and example of a MasterCard statement from 'ARK-LA-MS Tri St Org Fund", and Tri-States Pipe Trades Organization's Tax Return (Form 990) from 2007-2008 showing a unique federal tax identification number.  Tri-States demanded the complete file within seven business days in this April 16, 2010 letter.  Faced with imminent litigation, five business days later, April 23, 2010, Hartford filed the instant action, although it had been on notice of Tri-States' claim for over 15 months.

## ARGUMENT AND AUTHORITIES

**A.     Venue Should be Transferred in the Interest of Justice.**

The statute addressing change of venue provides as follows:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

28 U.S.C. § 1404(a).  Wright, Miller, & Cooper address the importance of the "interest of justice" factor:

> [I]t is well established that the interest of justice is a factor (albeit an extremely amorphous and somewhat subjective one) to be considered on its own and is an extremely important one.  Indeed, a number of federal courts have considered this factor decisive – outweighing the other statutory factors – in ruling on a change of venue motion even though the convenience of the parties and witnesses pointed in a different direction.

4

Alan Wright, Arthur R. Miller, and Edward H. Cooper, 15 *Federal Practice and Procedure* § 3854 (3d ed). "Although the letter of section 1404(a) might suggest otherwise, it is well established that 'the interest of justice' is an important factor in the transfer analysis." *Datatreasury Corp. v. First Data Corp.*, 243 F.Supp. 2d 591, 593 (N.D. Tex. 2003) (citing *In re Medrad, Inc.,* 1999 Westlaw 507359 at *2 (Fed. Cir. June 25, 1999) and Wright, Miller & Cooper). "Transfer is particularly appropriate where related cases involving the same issues are pending in another court." *Id.* "Since *Continental Grain* [v. Barge FBL-585, 364 U.S. 19, 80 S. Ct. 1470, 4 L.Ed. 2d 1540 (1960)], a number of courts, including the Fifth Circuit, have held that the existence of related litigation in a transferee court is a factor that weighs strongly in favor of transfer." *Id.*

The Fifth Circuit in *Jarvis Christian College v. Exxon Corp.*, 845 F.2d 523 (5th Circ. 1988), held that a district court did not abuse its discretion when the court transferred an action for reimbursement by Exxon and a second action by Exxon seeking certification of a defendant class of property to owners another district in Texas in which property owners had obtained injunctive relief prohibiting Exxon from reducing royalty payments as a result of Exxon's violation of Department of Energy regulations. *Id.* at 525-530. The Fifth Circuit held "Chief Judge Singleton was entitled to conclude that the interests of justice would be best, and most expeditiously, served by the consolidation of this litigation before the Tyler court." *Id.* at 524.

Earlier, the Fifth Circuit held a district court abused its discretion by ordering duplicative injunctive relief prohibiting a strike instead of transferring the case to the District of Columbia district court, which had already enjoined the strike. *Brotherhood of Locomotive fireman & Engineman v. Central of Georgia Railway Co.,* 411 F.2d 320 (5th Cir. 1969).

Transfer is particularly appropriate in this case as the agency relationship between the individual tortfeasors and Tri-States is an issue in the *King* litigation, as is the status of Tri-States as an entity separate from its local union constituents and the international union. The plaintiff in *King* alleges Local 714, Tri-States, and the international union or a single employer and/or are alter egos of one another. Specifically, King alleges individuals acted "within the course and scope of their respective employment, membership and/or agency relationship with the International Union, Tri-States and/or Local Union (or all three acting together), and/or were authorized and/or ratified by the International Union, Tri-States and/or Local Union (or all three acting together)." Doc. 152 at ¶17. King further alleges "Alternatively, all three entities — International Union; Tri-States and Local 714 — are so interwoven and intertwined with common leadership, financing activities, and control that they function as a single entity and should be so treated for purposes of imposing liability upon them, jointly and individually and imputing liability among them for their separate acts and conduct. . . . " Doc. 152 at ¶17. These actions share legal and factual issues. As an example of the related nature of these actions, the Southern District of Mississippi will likely consider the legal significance of the names by which Tri-States has been referred in the context of determining the agency issue. The Southern District of Mississippi has already and will consider the relationship between and among the international union, Tri-States, and the Local Union. Therefore, in order to avoid inconsistent rulings in different forums, this action should be transferred to the Southern District of Mississippi. The interest of judicial economy and avoidance of inconsistent judgments necessitate transfer.

**B.     The First-Filed Rule Should not Apply.**

"[W]hen two courts have concurrent jurisdiction over a dispute involving the same parties and issues, as a general proposition the forum in which the first-filed action is lodged has priority."  Charles A. Wright, Arthur R. Miller, and Edward Cooper, 15 *Federal Practice and Procedure* §3854 (3d ed.)  However, "exceptions have been found to exist when the district of the first-filed suit appears to have been selected based on forum shopping, anticipatory conduct, or when other special circumstances justify giving priority to the second action." *Id*.

In *Amerada Petroleum Corp. v. Marshall,* 381 F.2d 661 (5th Cir. 1967), Marshall had filed suit in the District of Columbia, where Amerada Petroleum Corporation was not amenable to service.  *Id*. at 662.  Counsel for Marshall requested by letter that Amerada Petroleum Corporation appear voluntarily in federal court in the District of Columbia, and informed Amerada if it did not appear voluntarily, Marshall would bring suit in a jurisdiction where Amerada was subject to service.  *Id.*  Three weeks later, Amerada filed suit in the Southern District of Texas.  *Id.*  Marshall then filed suit in New York.  *Id*. The Fifth Circuit affirmed the district court's transfer of the case to New York, addressing the exception to the first-filed as follows:

> The district court clearly was vested with discretion in deciding whether to hear the declaratory judgment suit which involves the same parties and issues as Mrs. Marshall's action filed in a court of coordinate jurisdiction.  There is sufficient evidence to support the judge's finding that the instant action was filed by Amerada as the immediate result of the letter inviting it to appear in the District of Columbia.  Amerada has been aware of Mrs. Marshall's claim since September 1963, yet it apparently did not feel compelled to seek a determination of its rights for over two years.  That Amerada's petition for declaratory judgment apparently was in anticipation of the New York suit is an equitable consideration which the district court was entitled to take into account.

*Id.* at 663. In the same way, Hartford has been aware of Tri-States claim since January 2009, but did not elect to file suit until Hartford received a demand letter with a draft complaint in April 2010.

The Fifth Circuit followed *Amerada* in *Mission Ins. Co. v. Puritan Fashions Corp.,* 706 F.2d 599 (5th Cir. 1983). In *Puritan Fashions*, the insurance company granted an extension of time of the contractual limitation period for suit to its insured. *Id.* at 601. The extension was 30 days from the date the insurance company provided a written statement of its position to the insured. *Id.* Then, instead of providing the written statement, the insurance company orally rejected the claim and filed a declaratory judgment action in Texas. *Id.* The insured subsequently filed suit in California state court. *Id*. The Fifth Circuit affirmed the district court's dismissal of the declaratory action, holding that the facts described above "would be enough to support a finding of anticipatory filing." *Id.* at 602. The Fifth Circuit also noted that the insured alleged it had prepared New York pleadings, and planned to file these pleadings on two occasions. *Id.* The Fifth Circuit stated that the district court did not credit the insurance company's position that the insured had never informed the insurance company of its plan to file suit in New York. *Id.* The Fifth Circuit concluded that "there can really be no dispute that [the insurance company] expected [the insured] to file suit if its claim was denied, and this suit was in anticipation of the expected action." *Id.* The Fifth Circuit held "[t]he district court therefore acted within its discretion in considering the anticipatory nature of this suit." *Id.*

Similar to the situation in *Puritan Fashions,* Hartford, when refusing to cover or defend Tri-States, asked Tri-States to submit additional information. Tri-States and Hartford exchanged information and communicated for over a year. In an effort to avoid litigation, Tri-States provided the additional information, in an effort to persuade Hartford to change it position.

Hartford only filed suit when it received the final demand and draft of the complaint from Tri-States, leading to the conclusion that Hartford filed this declaratory judgment action in anticipation of Tri-States' Mississippi suit.

The Fifth Circuit again visited a case of an insurance company filing an anticipatory judgment action in *Granite State Ins. Co. v. Tandy Corp.*, 986 F.2d 94 (5th Cir. 1992).  In *Granite State,* the Fifth Circuit affirmed a district court's stay of a declaratory judgment action, relying on *Puritan Fashions,* in pertinent part, as follows:

> As in *Puritan Fashions,* the insurance company and the insured in this suit engaged in lengthy negotiation regarding an investigation of the insured's proof of loss…. as in *Puritan Fashions*, because of the tenor of the parties' relations during the investigation, "there really can be no dispute that [the insurer] expected [the insured] to file suit if its claim was denied.  "*Puritan Fashions*, 706 F.2d at 602.

*Id.* at 96.

Hartford's actions are on all fours with these authorities.  Hartford engaged in negotiations with Tri-States, delaying Tri-States' filing of suit.  Then, when Tri-States informed Hartford suit was imminent, Hartford filed a declaratory judgment action.

## CONCLUSION

The Southern District of Mississippi should consider this case, as the underlying litigation is pending in that district.  Factual and legal issues will be common to both cases, so the judicial resources will be preserved by a transfer of venue.  The first-filed rule should not apply as Hartford filed this declaratory judgment action in anticipation of the filing of a complaint by Tri-States in Mississippi.

Respectfully submitted,

ROBEIN, URANN,
SPENCER, PICARD & CANGEMI, A.P.L.C

*s/ Christina L. Carroll*
Louis L. Robein (La. Bar No. 11307)
Christina L. Carroll (Miss. Bar No. 10507)
P.O. Box 6768
2540 Severn Avenue, Suite 400 (70002)
Metairie, Louisiana 70009-6768
Telephone: (504) 885-9994
Facsimile: (504) 885-9969
Email: lrobein@rul-law.com
ccarroll@rul-law.com

## CERTIFICATE OF SERVICE

I hereby certify that on June 8, 2010, I electronically filed the foregoing with the Clerk of the Court using ECF system which sent notification of such filing to the following:

Daniel J. Balhoff
2141 Quail Run Drive
Baton Rouge, Louisiana 70808

*s/ Christina L. Carroll*
Christina L. Carroll